IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONALD J. GRIFFIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1632-L-BN |
| | § | |
| GENPACT LLC and GENPACT | § | |
| US SERVICES, LLC, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 28.

Defendants Genpact LLC and Genpact US Services, LLC ("Genpact") have filed a motion to dismiss all but one of Plaintiff Donald J. Griffin's claims against them. *See* Dkt. No. 7. Genpact seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See id*.

Griffin then filed a response to the motion to dismiss, *see* Dkt. No. 13, and a motion for leave to file an amended complaint, *see* Dkt. No. 17.

For the following reasons, the Court should grant the Rule 12(b)(1) motion to dismiss the declaratory judgment claim, grant the motion for leave to file an amended complaint, and deny the Rule 12(b)(6) motion to dismiss as moot.

## Background

Griffin began working for Genpact on April 28, 2022. *See* Dkt. No. 1-6 at ¶9 (Plaintiff's Original Petition). His employment was terminated on June 13, 2022. *See id.* at ¶ 10.

On June 16, 2022, Genpact wired Griffin's final wages using the bank account information that Griffin provided for direct deposit during his employment. *See id.* at ¶ 36(a). The wire was immediately returned to Genpact with notations "unable to apply funds" and "return to sender" because, although Griffin's bank account was qualified to receive direct deposits, it could not receive wire transfers. *See id.* at ¶¶ 36(b) – (d).

Griffin did not receive his last payment, so he followed up with Genpact.

On June 23, 2022, Griffin emailed Gerrell Williams in HR "to confirm that my final paycheck would be direct deposited like the others." *Id.* at ¶ 11. Williams did not respond. *See id.* at ¶ 14.

On June 24, 2022, Griffin sent a text message to his direct supervisor, Lillian Flores, because he had not received his pay: "[w]as there an issue with my final paycheck. I'm not seeing a pay stub…and I haven't gotten a direct deposit either." *Id.* at ¶13. Flores told him his final paycheck was mailed to him that day. *See id.*

On July 5, 2022, Griffin emailed Williams again: "Lily says that [the final paycheck] was mailed out almost two weeks ago and I still haven't received it. There was never a clear reason given for why the check wasn't direct deposited like all the other paychecks I received. Since they are running payroll today…could the

previous check just be direct deposited?" *Id.* at ¶ 16. Williams did not respond. *See id.* at ¶ 17.

On July 12, 2022, Griffin forwarded his request to Pooja Mittal, the HR representative responsible for payroll matters, with a request to "please check." *Id.* at ¶ 18. Mittal did not respond.

On July 14, 2022, Griffin followed up with both Williams and Mittal. *See id.* at ¶ 19. Neither replied. *See id.*

On July 22, 2022, Griffin emailed Flores again: "I need an update on my final paycheck. Gerall isn't answering my emails and neither is the HR person from the website." *See id.* at ¶ 20. Flores replied that all she could do was remind Williams. *See id.*

Also on July 22, 2022, Griffin emailed Williams a third time: "[p]lease give me some kind of update on this. It has been over a month this has been dragging on…I need a status update beyond 'I'll look into this.'" *Id.* at ¶ 21.

On July 25, 2022, Williams responded that "[y]our final check wired on June 16. The bank received the funds. If you have any other questions you will need to connect with your bank." *Id.* at ¶ 23. Williams provided no further information. *See id.* at ¶ 24.

Griffin reviewed his bank statements and contacted customer service for all his accounts, but there was no record of the final payment. *See id.* at ¶ 25.

Griffin then hired legal counsel. *See id.*

On August 1, 2022, Griffin's counsel sent Genpact a draft complaint and

indicated Griffin would file suit the following week unless Genpact paid Griffin's wages by the end of the week. *See id*. at ¶¶ 28-29.

On August 5, 2022, Genpact's internal employment counsel Steven Frangoulis responded: "Genpact has fully paid former employee Donald Griffin all wages due to him … Genpact issued a direct deposit of Mr. Griffin's final wages … three days after Mr. Griffin's termination … into the … bank account that Mr. Griffin had provided to Genpact … at the commencement of his employment." *Id*. at ¶ 30. He attached a document purporting to show that the "funds were received at this account on June 16, 2022," *id*. at ¶ 31, but it showed only that Genpact sent a payment, *see id*. at ¶ 33.

Frangoulis initially declined Griffin's counsel's request to find out what happened to the money. *See id*. at ¶34. He later agreed to ask the payroll department to trace the payment but never followed up. *See id*.

Griffin's counsel's investigation revealed that Genpact's final payment was made by wire transfer, not direct deposit, and was returned to Genpact's bank account. *See id*. at ¶¶ 36-37.

On August 10, 2022, Griffin's counsel provided the wire confirmation showing the wire transfer of Griffin's final wages had been returned to Genpact two minutes after the wire was sent and asked Genpact to pay the missing wages immediately. *See id*. at ¶ 28.

After conducting its own investigation, Genpact paid Griffin's final wages of $682.02 on August 12, 2022 but refused to pay Griffin's demand for damages and

attorneys' fees. *See id*. at ¶¶ 39-40, 43.

Griffin faced a financial crisis because of Genpact's failure to pay and refusal to track down Griffin's final payment. Griffin terminated his 401(k) to pay his July 2022 rent, incurring an early withdrawal penalty and depriving him of the benefits of nearly 40 years of pre-retirement, tax-free growth. *See id*. at ¶¶ 22, 47. His phone service was cut off, and he incurred both late-payment and reconnection fees to have it restored. *See id*. at ¶ 48. His car insurance lapsed, and he was unable to make money driving for Uber or Lyft without car insurance. *See id*. at ¶ 49. He could not afford September rent and did not have money for a deposit on a less expensive apartment. *See id*. at ¶ 49. For the next several months, he moved from hotel to hotel every few days using the employee discount from his new job at a major hotel claim. *See id*. at ¶ 51. Otherwise, he would have been on the streets. *See id*. at ¶ 52.

Griffin sued Genpact in state court for breach of contract, negligent representation, negligence, gross negligence, and violations of the Fair Labor Standards Act ("FLSA"). He also sought a judgment declaring the arbitration agreement that Griffin signed at orientation unenforceable. *See* Dkt. No. 1-6 at ¶¶ 111-28.

After removing the case to this Court, Genpact filed a partial motion to dismiss, seeking dismissal of all of Griffin's claims except those brought under the FLSA. *See* Dkt. No. 7. Griffin filed a response to the partial motion to dismiss, *see* Dkt. No. 13, and Genpact filed a reply, *see* Dkt. No. 15.

In the motion to dismiss, Genpact asserts the Court does not have subject matter jurisdiction over Griffin's declaratory judgment claim because there is no case or controversy where Genpact is not enforcing the arbitration agreement and is willing to stipulate that it will not enforce the arbitration agreement.

Genpact asserts that Griffin fails to state a claim for breach of contract on which relief can be granted because Griffin allegedly has been paid in full under an employment-at-will contract; Griffin's negligent misrepresentation, negligence, and gross negligence claims are barred as a matter of law by the economic loss rule and because an employee cannot bring a tort claim for the late payment of wages; and Griffin's contract and tort claims are preempted by the FLSA.

Griffin sought leave to amend the complaint 25 days after briefing on the motion to dismiss was completed. *See* Dkt. No. 17. Griffin did not attach a copy of the proposed amended complaint to the motion for leave when it was filed. *See id*. But he filed the proposed amended complaint and exhibits to the proposed amended complaint a few days later. *See* Dkt. Nos. 19-21. Genpact filed a response, *see* Dkt. No. 26, and Griffin filed a reply, *see* Dkt. No. 33.

In the proposed amended complaint, Griffin asserts that there is a controversy concerning the arbitration agreement because arbitrability is determined by the Court, not unilaterally by one of the parties to the agreement. He alleges that Genpact threatened to fully enforce the arbitration agreement and seeks a declaration that the arbitration agreement is unenforceable because it is unconscionable or because it was made under duress. Alternatively, he seeks a

declaration that, even if the arbitration agreement is enforceable, the terms requiring Griffin to pay a filing fee and half of the arbitration fees, costs, and expenses are unenforceable.

Griffin breaks his breach-of-contract claim into two claims: one for breach of the employment agreement and one for breach of the direct deposit agreement.

Griffin alleges that the negligent misrepresentation claims are based on representations that Genpact made to him after the contractual relationship ended. And he alleges that the negligence and gross negligence claims are based on Genpact's attempt to pay him by an unauthorized means – wire transfer – instead of by the means that he authorized in writing – direct deposit – in violation of Texas Labor Code § 61.007.

And Griffin alleges that Genpact violated the FLSA by failing to pay minimum wages. Specifically, he alleges that Genpact is liable for liquidated damages equal to late-paid minimum wages and that Genpact cannot rely on the FLSA's good-faith exception to avoid liquidated damages.

After the case was referred to the undersigned for pretrial management, the undersigned granted the parties' request and agreed to postpone entry of the Federal Rule of Civil Procedure 16(b) Scheduling Order pending resolution of the pending motions. *See* Dkt. No. 31.

## Legal Standards and Analysis

I.    The Court should grant the Rule 12(b)(1) motion to dismiss the declaratory judgment claim for lack of subject matter jurisdiction.

A.    Federal Rule of Civil Procedure 12(b)(1) standards.

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

The Court must dismiss a complaint for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (cleaned up). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted). The plaintiff must demonstrate standing for each claim and form of relief sought. *See DaimlerChrysler Corp. v. Duno,* 547 U.S. 332, 352 (2006) (noting that

"our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press" and that "[w]e have insisted ... that a plaintiff must demonstrate standing separately for each form of relief sought" (cleaned up)).

The United States Court of Appeals for the Fifth Circuit recognizes a distinction between a "facial" attack to subject matter jurisdiction, which is based only on the pleadings, and a "factual" attack to jurisdiction, which is based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *accord Ramming*, 281 F.3d at 161 ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Regardless of the nature of the attack, the plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161.

Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively facial, and the Court need look only to the sufficiency of the allegations of plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989); *Paterson*, 644 F.2d at 523.

But, on a factual attack, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule 12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary

method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523. "When considering Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court must give the plaintiff an opportunity to be heard, particularly when disputed factual issues are important to the motion's outcome. In some cases, an oral hearing may be indispensable due to the complicated factual disputes underlying the case." *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 319 (5th Cir. 2012) (footnotes omitted). But "an oral hearing is not always necessary if the parties receive an adequate opportunity to conduct discovery and otherwise present their arguments and evidence to the court." *Id.* at 319-20 (footnote omitted).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citations omitted).

"The existence of subject matter jurisdiction is determined at the time of removal." *In re Bissonnet Inv. LLC*, 320 F.3d 520, 525 (5th Cir. 2023). To make this determination, the Court considers the claims in the state court petition as they existed at the time of removal. *See Juanopulos v. Salus Claims Mgmt. LLC*, 518 F.

Supp. 3d 973, 975 (S.D. Tex. 2021) (citing *Manguno v. Prudential Prop. & Cas. Ins*., 276 F.3d 720, 723 (5th Cir. 2002)).

B.    The Court lacks subject matter jurisdiction over the declaratory judgment claim because it is moot.

In his original petition, Griffin alleges that Genpact told him that it planned to fully enforce an arbitration agreement he signed at orientation. *See* Dkt. No. 1-6 at ¶ 65.

The arbitration agreement requires Griffin to arbitrate all employment-related claims against Genpact but excludes claims concerning enforceability or validity of the agreement itself. *See id*. at ¶¶ 66-67, 114. The arbitration agreement also provides that, if Griffin pursues arbitration, he must pay a filing fee and half of all remaining arbitration fees, costs, and expenses. *See id*. at ¶ 115.

Griffin contends that there is a real, substantial, justiciable controversy between the parties regarding the validity and enforceability of the arbitration agreement. *See id*. at ¶113. Griffin asserts that his claims are not subject to the arbitration agreement, and he seeks a declaration that the arbitration agreement is unenforceable because it is unconscionable and was entered under duress. *See id*. at ¶¶ 69-103, 117-18.

Alternatively, Griffin alleges that, even if the arbitration agreement is enforceable, it cannot be enforced a written because it violates the Minimum Standards of Procedural Fairness for the JAMS Employment Rules and Procedures

incorporated into the arbitration agreement by reference, specifically those concerning what Griffin would be required to pay. *See id.* at ¶119-23. Griffin seeks an alternative declaration that, if he initiates arbitration, he will be responsible for paying only filing fee. *See id.* at ¶ 124.

Genpact filed a motion to dismiss for lack of subject matter jurisdiction. *See* Dkt. No. 7 at 11-13 of 19. According to Genpact, "Count I should be dismissed because Genpact will not enforce the arbitration provision in this case and will stipulate to that fact if necessary." *Id.* at 12 of 19. Genpact argues that "there is no case or controversy" between the parties on Count I because "Genpact has not taken, and will not take, any steps to enforce the arbitration agreement that it has with [Griffin] due to the minimal dollar value in this case, which does not warrant the administrative costs associated with arbitration. Indeed, if necessary, Genpact will stipulate to this fact." *Id.*

Genpact cites case law touching on the ripeness and mootness doctrines and the requirements that there be "facts alleged, under all the circumstances, [that] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," where "[d]istrict courts are without power to grant declaratory relief unless such a controversy exists." *Id.* at 12-13 of 19. Genpact asserts that, "[t]hus, as the parties agree that this case should proceed in this Court, Plaintiff's declaratory judgment claim does not present a case or controversy, and this Court should dismiss Count I pursuant to Rule 12(b)(1)." *Id.* at 12 of 19.

To start, the parties cannot create or maintain subject-matter jurisdiction in this Court by agreement. *See Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985).

To remove this case, Genpact, as the removing party invoking federal jurisdiction, bore the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001). Genpact met that burden by showing that the Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Griffin alleges a claim under the FLSA, which creates federal question jurisdiction to support removal. *See* Dkt. No. 1. And, as Genpact's Notice of Removal correctly states, "removal converts Plaintiff's state law declaratory judgment action into an action under the federal Declaratory Judgment Act, 28 U.S.C §§ 2201, 2202." *Id.* at 3; *accord Edionwe v. Bailey*, 860 F.3d 287, 294 n.2 (5th Cir. 2017). And "[t]his Court has supplemental jurisdiction over Plaintiff's remaining state law claims because they are part of the same 'case or controversy' as the federal law claim." Dkt. No. 1 at 3 (citing 28 U.S.C. § 1367).

But, as to a matter removed from state court, "compliance with [28 U.S.C.] § 1331 is necessary but not sufficient for federal subject matter jurisdiction. The plaintiffs must also show that they have Article III standing," *Lutostanski v. Brown*, 88 F.4th 582, 588 (5th Cir. 2023) – or, more broadly, that there is a justiciable case or controversy to support jurisdiction in this Court under Article III, where "[t]he justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's 'case' or 'controversy' language," *Choice Inc. of Tex. v.*

*Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).

The Supreme Court has explained why that burden now lies with Griffin:

> Because defendants removed the case from state court to District Court, plaintiffs were not initially the parties that invoked federal jurisdiction. …. Nonetheless, because [w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record, the party asserting federal jurisdiction when it is challenged has the burden of establishing it. Whatever the parties' previous positions on the propriety of a federal forum, plaintiffs, as the parties seeking to establish federal jurisdiction, must make the showings required for standing.

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). And standing, mootness, and ripeness must be satisfied as to each claim or form of relief that a plaintiff seeks to press. *See id.* at 352-53.

But this is not an instance in which a defendant invoked federal jurisdiction to support removal and then moved to dismiss the entire case for failure to satisfy the Article III case or controversy requirement. The Fifth Circuit recently required a case remanded to state court under those circumstances, explaining:

> Defendants removed to federal court on the assurance that federal courts would have the jurisdiction defendants invoked. Then, having invoked federal jurisdiction, defendants turned around and sought a dismissal in federal court on the grounds that the plaintiffs lacked standing. That is not how the system works. Either the federal courts have subject matter jurisdiction, and the plaintiffs' claims can be adjudicated; or there is no federal jurisdiction, and the suit must be remanded to state court. Federal jurisdiction is not a game of whack-a-mole.

*Lutostanski*, 88 F.4th at 588.

But, here, Genpact does not seek dismissal of the FLSA claim that supports Section 1331 federal question jurisdiction and does not contend that the FLSA claim

-14-

(or, for that matter, the state law claims) fails to satisfy the Article III case or controversy requirement. Genpact asserts only that Griffin's claim seeking declaratory relief is now moot. Because a failure to satisfy the Article III case or controversy requirement as to Count I's claim for a declaratory judgment would not eliminate the Court's subject-matter jurisdiction over this "case," Genpact's Rule 12(b)(1) motion as to that claim is procedurally proper and, if meritorious, would not require remand under 28 U.S.C. § 1447(c) as opposed to dismissal. *Compare Lutostanski*, 88 F.4th at 585-88; *Spivey v. Chitimacha Tribe of La.*, 79 F.4th 444, 445-49 (5th Cir. 2023); *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 768-75 (5th Cir. 2023), *with DaimlerChrysler Corp.*, 547 U.S. at 337-54; *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 22-10414, 2023 WL 2573914, at *2-*5 (5th Cir. Mar. 20, 2023).

"As a general rule, standing must exist at the time an action is filed," *Guajardo v. Air Exp. Int'l, USA, Inc.*, No. 3:12-cv-815-L, 2012 WL 2886672, at *2 (N.D. Tex. July 16, 2012), or, in a removed case, "at the time of removal," *Buras v. Hill*, No. 4:22-CV-753-SDJ, 2023 WL 4234393, at *1 (E.D. Tex. June 28, 2023). And, "[a]t its core, ripeness is a matter of timing that serves to prevent courts from entangling themselves in cases prematurely." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 312 (5th Cir. 2021); *accord Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) ("A case or controversy must be ripe for decision, meaning that it must not be premature or speculative. That is, ripeness is a constitutional prerequisite to the exercise of jurisdiction." (cleaned up)).

"[B]ut Article III demands that an 'actual controversy' persist throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). And, so, "[t]he mootness doctrine … considers whether the present or threatened injury required for standing continues to exist." *Consumer Data Indus. Ass'n v. Tex. through Paxton*, No. 21-51038, 2023 WL 4744918, at *3 n.6 (5th Cir. July 25, 2023) (cleaned up; citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-94 (2000)).

The right to arbitrate, like all contract rights, can be waived. *See Tupelo Children's Mansion, Inc. v. Elegant Reflections, LLC,* No. 1:23-cv-76-SA-DAS, 2023 WL 8259254, at *6 (N.D. Miss. Nov. 23, 2023). Genpact represents to the Court that it will not compel arbitration and is willing to stipulate to that fact. *See* Dkt. No. 7 at 12. Genpact also removed the case to this Court and filed the pending motion to dismiss, acts that demonstrate a desire to resolve the arbitrable dispute through litigation rather than arbitration. *See id.* (quoting *Forby v. One Technologies, L.P.*, 909 F.3d 780, 784 (5th Cir. 2009)); *see also Neukranz v. Constoga Settlement Servs., LLC*, No. 3:19-cv-1681-L, 2022 WL 35752, at *2 (N.D. Tex. Jan. 4, 2022) (dismissing request for stay of litigation pending arbitration as moot in light of the parties' agreement to waive the right to arbitrate). The undersigned finds that Genpact has waived its right to arbitration.

And Griffin's declaratory judgment claim seeking a declaration that the arbitration agreement is unenforceable is now moot because there is no longer a case or controversy concerning the arbitration agreement.

Accordingly, the Court does not have subject matter jurisdiction over Griffin's declaratory judgment claim and Genpact's Rule 12(b)(1) motion to dismiss that claim for lack of subject matter jurisdiction should be granted.

II.    **The Court should grant the motion for leave to file an amended complaint and deny the Rule 12(b)(6) motion to dismiss for failure to state a claim as moot.**

A.    Federal Rule of Civil Procedure 15(a)

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend his pleading once as a matter of course within 21 days after serving it, or if a responsive pleading is required, within 21 days of receiving the responsive pleading or a motion under Rule 12(b), (e), or (f). Rule 15(a) evinces a bias in favor of amendment and requires that leave be granted "freely." *Chitimacha Tribe of La. V. Harry L. Laws Co., Inc.,* 690 F.2d 1157, 1162 (5th Cir. 1982). A court's discretion to grant leave is severely limited by the bias of Rule 15(a) favoring amendment. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Leave to amend should not be denied unless there is a *substantial reason* to do so. *See Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998). There is a substantial reason to deny leave if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile. *See Foman v. David*, 371 U.S. 178, 182 (1962); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

In the context of Rule 15(a), the Fifth Circuit has interpreted futility to mean that "the amended complaint would fail to state a claim upon which relief could be granted," so courts must apply the same standard as under Rule 12(b)(6). *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

Leave to amend does not need to be granted when the amended complaint would not defeat a motion to dismiss. *See id.* The issue of futility, however, is better addressed "in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer." *Smallwood v. Bank of America*, No. 3:11-cv-1238-D, 2011 WL 4941044, at *1 (N.D. Tex. Oct. 17, 2011); *see also McDade v. Wells Fargo Bank, N.A.*, No. H-10-3733, 2011 WL 4860023, at *4 (S.D. Tex. Oct. 13, 2011) (explaining that in the context of a motion for leave, futility means that "the amended complaint would fail to state a claim upon which relief could be granted") (quoting *Stripling*, 234 F.3d at 873). This court's "almost unvarying practice when futility is raised [in response to a motion for leave to amend] is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion ... where the procedural safeguards are surer." *Poly-America, Inc. v. Serrott Int'l Inc.*, No. 3:00-cv-1457-D, 2002 WL 206454, at *4-5 (N.D. Tex. Feb. 7, 2002).

B.    <u>There is no substantial reason to deny leave to amend.</u>

As an initial matter, Genpact argues the motion for leave to amend should be denied because at the time of filing Griffin failed to attach a copy of the proposed amended complaint to the motion for leave to amend in violation of Local Civil Rule 15.1(b).

-18-

Genflect is technically correct. And, although the Court discourages non-compliance with the local rules, the undersigned finds that Griffin met the spirit if not the letter of Local Civil Rule 15.1(b) by filing the proposed amended complaint and exhibits in the days following the filing of the motion for leave to amend. In this case, the delay of a few days in filing the proposed amended complaint and exhibits is not a substantial reason to deny the motion to amend.

Griffin was under no court-ordered deadline to file the motion for leave to amend the complaint. And he was not required to file it as a matter of course within 21 days after the motion to dismiss was filed.

Filing the motion for leave to amend 25 days after briefing on the motion to dismiss was completed did not result in undue delay or prejudice to Genpact. Nor does it show the motion for leave was filed in bad faith or with dilatory motive.

Genpact argues that Griffin waived his declaratory judgment claim because he failed to address it in response to the motion to dismiss. Genpact asserts they will be prejudiced if the motion for leave is granted because Griffin will be able to reassert the claim. But, as explained above, the Court should dismiss that claim as moot.

The undersigned finds no substantial reason to deny Griffin's motion for leave to file an amended complaint – excluding the moot declaratory judgment claim. The determination of whether the proposed amended complaint states claims for which relief may be granted would be better addressed in a Rule 12(b)(6) or Federal Rule of Civil Procedure 56 motion directed at those specific claims.

**Recommendation**

The Court should grant Defendants' Partial Motion to Dismiss [Dkt. No. 7] under Federal Rule of Civil Procedure 12(b)(1) and dismiss the declaratory judgment claim as moot; should grant Plaintiff's Motion for Leave to File First Amended Complaint [Dkt. No. 17] and direct Griffin to file Plaintiff's First Amended Complaint consistent with these findings and conclusions; and should deny as moot Defendants' Partial Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 7].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 9, 2024

-20-

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE